UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL DOCKET No.

CHESTER J. CHALUPOWSKI, Jr.
MALGORZATA B. CHALUPOWSKI
        Plaintiffs

v.

PETER C. DIGANGI, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY AS
ASSOCIATE JUSTICE OF THE PROBATE
AND FAMILY COURT OF ESSEX COUNTY
        Defendant

**VERIFIED COMPALINT**

**JURISDICTIONAL BASIS**

1. Plaintiffs claim federal jurisdiction pursuant to Article III, paragraph 2, which extends the jurisdiction to cases arising under the U.S. Constitution.

2. Plaintiffs bring this action pursuant to Title 42 U.S. Code paragraph 1983 for violations of certain protections guaranteed them by the First, Fifth, Eight, and Fourteenth Amendments of the Federal Constitution, by the Defendant under color of law in his capacity as a judge in the Probate and Family Court of Essex County.

1

**PARTIES**

3. Plaintiffs, Chester J. Chalupowski, Jr. and Malgorzata B. Chalupowski, MD, PhD, husband and wife, are natural persons residing at 119 Water Street, #65, in Beverly, Massachusetts.

4. Defendant, Peter C. DiGangi, is a Judge presiding at the Essex County Probate and Family Court.

**INTRODUCTION**

5. This case arises from the Defendant's role in a protracted vexatious litigation resulting from over a dozen lawsuits filed on behalf of a mentally impaired woman (suffering from a paranoid personality disorder confounded by alcoholism), Donna Chalupowski of Salem, Massachusetts, against every member of her immediate family: her 85-year-old mother, Mary Jane Chalupowski, her sister, Judith Chalupowski-Venuto, and her brother Chester J. Chalupowski, Jr.

6. The unending string of lawsuits started in 1993, when Donna Chalupowski was advised to sue her brother, Chester, when he and their mother, Mary Jane, executed an annuity agreement regarding liquid assets held by Mary Jane in several bank accounts. The case against Chester was filed with the Essex Superior Court, with

Donna as a plaintiff - "next friend" for Mary Jane, despite the fact that Mary Jane was neither a minor, nor an incompetent individual.

7. Faced with a possible dismissal of the Superior Court action due to lack of standing, in February 1994, Donna Chalupowski filed with the Essex Probate Court a petition seeking to have Mary Jane (a vivacious, fully cognizant elderly lady) declared incompetent.

8. Two more Probate Court actions filed by Donna Chalupowski in November 1995, and January 1996, against her mother, Mary Jane, were accompanied by yet another Superior Court action filed by Donna Chalupowski against her mother, Mary Jane, and her sister, Judith, in October 1995.

9. After losing all three Probate Court actions (on July 3, and October 30, 1996), voluntarily dismissing her first Superior Court action (on September 11, 1996), and abandoning her second Superior Court action (dismissed on August 7, 1997), Donna Chalupowski shifted the focus of her attacks against her family members to the venue of the District Court in Salem. Here she managed to obtain and maintain for years numerous (over ten) restraining orders against her family members.

10. While enjoying the 'benefits' of the variety of her restraining orders (e.g. free accommodation on the family trust premises for herself and third parties), in December 2000, Donna Chalupowski started filing a second series of her vexatious, repetitious lawsuits against her family members. Two new cases filed on December 26, 2000, were followed by one more new action filed on January 5, 2001, and yet another one filed on February 22, 2001.

11. On December 14, 2001, three out of the above listed four cases were dismissed by an Order issued by John C. Stevens, III, Chief Justice of the Essex Probate and Family Court, leaving only one case pending.

12. In the late December 2001, Donna Chalupowski, (through her attorney, Joseph P. Corona, representing her in all actions ever filed against her family members) filed notices of appeal in regard to the three dismissed case.

13. Despite the fact that three out of the four above mentioned cases were dismissed and appealed in December 2001, the Probate Court in Salem and the lawyers involved in the litigation treated the dismissed cases as if they were still pending before the trial court. The Court continued to accept

pleadings under four docket numbers, maintained active files for the three dismissed cases, held hearings on matters related to the dismissed cases, and issued numerous orders under four docket numbers and pertaining to matters related not only to the case which was in fact pending, but also to the matters dismissed and subject of appeal.

14. The resulting confusion was intentionally manufactured by the court officers through numerous deceptive and fraudulent acts (tampering with docket sheets, altering court documents, using inappropriate docket numbers, and making false and misleading statements).

## STATEMENT OF CASE

15. In or about November 2003, the Defendant, Peter C. DiGangi, acting in his official capacity of an Associate Justice in the Probate and Family Court of Essex County, assumed jurisdiction over the case (in fact a conglomerate of one pending and three dismissed cases) after John C. Stevens, Chief Justice of the Essex Probate and Family Court, recused himself from handling the matter.

16. Immediately after being assigned to the matter, Defendant was informed that despite the fact that there were four docket numbers appearing on the majority of pleadings and court documents, three out of these four actions were dismissed as of December 14, 2001.[1] And only one, docket # 00E-0127-GC1, was in fact pending before the court.[2]

17. Despite being explicitly informed about the fact that actions #94P-0314-C1, 00E-0126-GC1, and 01E-0005-GC1 were dismissed, Defendant refused to limit the court proceedings to issues related to the only pending case (00E-0127-GC1), and continued the charade instituted by his predecessor, Judge John C. Stevens, which hinged upon commingling the matters pertaining to cases dismissed and appealed in December 2001, with the matters pertaining to the only case in fact pending before the court.

18. Filing a notice of appeal divests a trial court of jurisdiction over matters related to appeal. Therefore, since January 2002 till present, the Essex Probate and Family Court, as well as the Defendant in his capacity of the Associate Justice of said Court,

---

[1] The three dismissed cases pertained to the Chalupowski family real assets (two multifamily buildings) held in a realty trust.
[2] The only **not** dismissed case pertained to the Chalupowski family liquid assets (approximately $170,000.00 invested with Fidelity Investments) held in a separate 'money' trust.

was devoid of any jurisdiction over the matters which were the subject of the dismissed and appealed cases.

19. Defendant's failure to inspect and correct the court record upon being assigned to handle the matter is a violation of M.G.L. Chapter 217: Section 11.

20. By not correcting the court record, defendant actively maintained and concealed numerous plainly criminal actions committed by the attorneys involved in the litigation. Said actions include, but are not limited to the following: multiple instances of perjury, extortion, fraud on the court, tampering with court records, and obstruction of justice. In this regard, Defendant's failure to address the wrongdoings of lawyers appearing before him, may amount to aiding and abetting, or misprision of felony.

21. Consequently, in March 2004, while acting on dismissed cases, opposing counsel subpoenaed Plaintiffs' bank records, and after founding out the value of their holdings (over $400,000.00) quickly adjusted the range of their false accusations (and the price tag of their services) to match exactly the amount of funds available in the Plaintiffs' accounts.

22. Despite the fact that evidence was provided to the Court that over $280,000.00 of Chester's and Malgorzata's funds came from refinancing of their two properties, Defendant accepted on a face value a flurry of unsubstantiated and false allegations that the money must have been "embezzled" or "stolen" from the Chalupowski family trusts.

23. Between May 11, and May 23, 2004, while acting without subject-matter jurisdiction, Defendant issued a series of orders by which a group of court officers was allowed to wrest from the Plaintiff, Chester Chalupowski, the control of the Chalupowski family assets.

24. On May 14, 2004, while acting without jurisdiction, Defendant issued a capias for Plaintiff's, Chester Chalupowski's arrest. Said capias was misrepresented to the Essex County Sheriff's Department as a bench warrant. Consequently, Plaintiff was arrested at or around 6:00 PM at his residence, and spent the weekend of May 14, 2004, (over 64 hours) in the Middleton Penitentiary.

25. On May 17, 2004, Chester Chalupowski was released after paying $1,500.00 in fines. He was ordered to make his check out to the "Judge of the Essex Probate

Court." Said funds were never submitted to the Commonwealth, which is a violation of M.G.L. Chapter 29A: Section 3.

26. On May 24, 2004, a trial on four cases (one pending and three dismissed and appealed in December 2001) commenced at the Essex Probate and Family Court in Salem. After being interrogated by the Court re-trying dismissed cases, the following morning, Chester Chalupowski filed with the Appeals Court his application for temporary restraining order. The application was denied.

27. On August 17, 2004, Defendant issued a 26-page Order dealing with all four cases (one pending, and three dismissed and appealed in December 2001). Said Order was not only issued by the Court lacking subject-matter jurisdiction, but was also based on false accusations and fraudulent statements notoriously made by the opposing counsel. Said accusations were accepted by the Defendant despite the fact that the prima facie evidence contradicting all the false accusations was readily available in the court files.

28. On August 31, 2004, an ex parte attachment of over $400.000.00 of personal assets belonging to Chester and Malgorzata Chalupowski, was issued by the

9

Defendant pursuant to his August 17, 2004 order pertaining to matters dismissed and appealed in December 2001.

29. The Plaintiffs, Chester and Malgorzata Chalupowski, were never formally notified by the court about the ex parte attachment of their assets, and found out that all their funds (including all checking accounts) were seized, when they tried to use their check card to pay for their groceries and gas on September 10, 2004.

30. On October 4, 6, 12, and 14, 2004, Plaintiff, Chester Chalupowski, filed with the Probate Court in Salem his oppositions to motions for attorneys' fees submitted by the opposing counsel on September 27, 2004.

31. In his fully documented pleadings Chester Chalupowski listed all criminal wrongdoings committed by the opposing counsel - multiple instances of perjury, extortion, tampering with court records and conduct prejudicial to administration of justice.

32. In his pleadings dated October 4, 6, 12, and 14, 2004, Chester Chalupowski explicitly requested the Probate Court Judge to bring the criminal wrongdoings of the attorneys to the attention of appropriate law enforcement authorities.

33. Defendant did not report the criminal wrongdoing of the lawyers to the law enforcement authorities. Instead, on November 2, 2004, Defendant issued an order awarding them over $160,000.00 in "attorneys' fees." Said order erroneously asserts that "their requests for fees were submitted uncontested."

34. On November 10, 2004, Plaintiff, Chester Chalupowski, filed with the Probate and Family Court in Salem his Rule 60 (b) (3) Motion, in which he presented again all arguments and documentation evidencing the ongoing fraudulent actions perpetrated by the aforementioned group of attorneys. The Motion was accompanied by a request for a hearing. The Motion was denied on December 2, 2004, without a hearing.

35. While reviewing the Probate Court file on November 22, 2004, Chester Chalupowski found out that the orders issued by the Probate Court in May 2004, were never docketed. Only after he brought the matter to the attention of the Registrar of Probate, were the May 2004 orders docketed on November 23, 2004. Therefore, on November 30, 2004, Chester Chalupowski filed his notices of appeal in regard to all the orders issued in May and docketed on November 23, 2004.

36. On December 10, 2004, Chester Chalupowski, pursuant to the M.G.L. Ch.215, Par.11, filed with the Probate Court his Request for Report of Material Facts upon which the Court's denial of his Rule 60 (b) (3) Motion was based. This request remains unanswered.

37. Due to the Probate Court's failure to comply with the Appeals Court Order dated August 20, 2004, on December 10, 2004, Chester Chalupowski filed with the Probate Court his Request for a Pretrial Assignment in regard to the three cases remanded to the trial court level by the Appeals Court August 20, 2004, Order. This request remains unanswered.

38. During a Probate Court hearing held on December 16, 2004, the Defendant made a statement indicating to the Plaintiff, Chester Chalupowski, that if he does not stop filing his appeals and other "extirpative" pleadings, the Defendant will report him to the DA Office, "based on [the] findings in this case."

39. Plaintiff took the above statement as a threat. Such a threat constitutes a violation of M.G.L. Chapter 265, Section 25.

40. Also during the December 16, 2004 Probate Court hearing, Chester Chalupowski and his wife Malgorzata (both acting pro se in several court actions) were

threatened that if they do not stop filing their pleadings and appeals, they will be reported to the DA Office for "unauthorized practice of law." Such a threat is a violation of M.G.L. Chapter 265, Section 25, as well as violates Plaintiffs' rights guaranteed them by the Federal Constitution.

41. As a result of Defendant's numerous actions undertaken without subject-matter jurisdiction, the group of court officers wrested from the Plaintiff, Chester J. Chalupowski, Jr., the control of his family estate consisting of two trusts (Realty Trust and Money Trust) worth over $2,000,000.00.

42. As a result of Defendant's numerous actions undertaken without subject-matter jurisdiction, the group of court officers seized, liquidated, and distributed among themselves over $400,000.00 of personal assets belonging to Chester and Malgorzata Chalupowski.

43. As a result of Defendant's numerous actions undertaken without subject-matter jurisdiction, Plaintiffs, Chester and Malgorzata Chalupowski, suffered serious monetary damages, severe emotional trauma, aggravated health problems, loss of investment opportunities, and substantial damage to their reputation.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray this Court issue equitable relief as follows:

1. Issue declaratory relief declaring void all orders and judgments issued by the Defendant, Peter C. DiGangi outside of jurisdiction of the Probate and Family Court.

2. Issue injunctive relief as this Court deems appropriate and just.

3. Issue other relief as this Court deems proper and just.

4. Award Plaintiffs their cost of litigation.


Respectfully submitted Pro Se



Chester J. Chalupowski, Jr.          Malgorzata B. Chalupowski
119 Water Street, #65
Beverly, MA 01915
(978)921 4945



Dated: January 5, 2005

**STATEMENT OF VERIFICATION**

We have read the above complaint and it is correct to the best of our knowledge.


Chester J. Chalupowski, Jr.     Malgorzata B. Chalupowski


Dated: January 5, 2005

**JS 44** (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
CHESTER J CHALUPOWSKI JR.
MALGORZATA CHALUPOWSKA

**DEFENDANTS**
PETER C. DIGANGI

(b) County of Residence of First Listed Plaintiff  ESSEX
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  ESSEX
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
PRO SE

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument |  / ☐ 365 Personal Injury - Product Liability |  | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 840 Trademark | ☐ 480 Consumer Credit |
|  | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health |  | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits |  / ☐ 371 Truth in Lending | ☐ 690 Other |  | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury |  | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |  | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land |  / ☐ 530 General |  | ☐ 871 IRS—Third Party 26 USC 7609 |  |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty |  |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other |  |  |  |
|  |  / ☐ 550 Civil Rights |  |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 446 Amer. w/Disabilities - Other / ☐ 555 Prison Condition |  |  |  |
|  | [x] 440 Other Civil Rights |  |  |  |

## V. ORIGIN (Place an "X" in One Box Only)

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Title 42 U.S Code par. 1983

Brief description of cause:
Civil rights violation

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____    DOCKET NUMBER _____

DATE  1-5-05
SIGNATURE OF ATTORNEY OF RECORD  /s/ Malgorzata Chalupowska

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____